NOT FOR PUBLICATION                                    (Doc. Nos. 53, 65)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                            :
MONICA RAAB,                                :
                                            :
                        Plaintiff,          :    Civil No. 11-6818 (RBK/KMW)
                                            :
            v.                              :    **OPINION**
                                            :
                                            :
CITY OF OCEAN CITY and                      :
JESSE SCOTT RUCH,                           :
                                            :
                        Defendants.         :
_____     :

**KUGLER**, United States District Judge:

This matter is before the Court upon motions for summary judgment filed by the City of

Ocean City ("Ocean City") and Officer Jesse Scott Ruch ("Officer Ruch") for summary

judgment on the claims asserted against them by Monica Raab ("Plaintiff").  Plaintiff asserts

claims under 42 U.S.C. § 1983, the New Jersey Civil Rights Act, and New Jersey common law

against Ocean City and Officer Ruch, who is a member of the Ocean City Police Department

("OCPD").[1]  For the reasons stated herein, Ocean City's motion will be **GRANTED**, and Officer

Ruch's motion will be **GRANTED IN PART** and **DENIED IN PART**.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

At approximately 9:00 AM on May 10, 2010, Officer Ruch stopped his patrol car outside

_____

[1] Although the motion filed by Ocean City purports to be filed on behalf of OCPD as well, OCPD was terminated as
a party on August 9, 2013, pursuant to a stipulation of dismissal.  See ECF Doc. No. 38.  Thus, the Court treats the
municipality's motion as one filed by Ocean City alone.

Plaintiff's residence to investigate a trailer that had no license plate and had been parked in the street "for about a month." (Ocean City's Statement of Undisputed Material Facts ("SUMF") ¶ 21; Deposition of Officer Ruch, Ocean City Mot. Summ. J. Ex. 3 ("Ruch Dep.") at 20:5-8.) Officer Ruch activated his overhead lights, and sounded his siren and air horn in the hope that someone would come out and move the trailer, but no one responded. (Ruch Dep. at 22:22-23:3.) After conducting a search of the national Vehicle Identification Number ("VIN") database, Officer Ruch came to the conclusion that the trailer was abandoned and contacted police dispatch by radio to request that a tow truck be sent to remove it. (SUMF ¶ 24.)

At approximately 9:15 AM, Plaintiff was awakened by her housekeeper, who had just arrived at the house and observed Officer Ruch outside. (Deposition of Monica Raab, Ocean City Mot. Summ. J. Ex. 20 ("Raab Dep.") at 14:6-23.) Plaintiff went outside, approached Officer Ruch and asked what the problem was. (Id. at 22:4-5.) He responded that the trailer was going to be towed shortly. (Id. at 22:7-10.) Plaintiff asked Officer Ruch not to tow it, because the trailer belonged to her brother-in-law who lived two blocks away, and she could have it moved immediately. (Id. at 23:18-23.) She asked if she could move the trailer into her driveway, and Officer Ruch told her she could not. (Id. at 24:2-7.)

Plaintiff unsuccessfully attempted to move the trailer into the driveway by lifting the tongue. (Id. at 32:13-21). As she did so, the trailer came into contact with Officer Ruch, who was standing at the opposite end, copying down information about the trailer. (Ruch Dep. at 42:1-10.) Plaintiff fell down and became pinned by the trailer, but was able to free herself. (Raab Dep. at 36:12-37:4.) Plaintiff then requested that Officer Ruch speak with her husband, Dr. Gary Raab, and went inside to call him on the phone. (Id. at 24:13-16.) As she crossed the lawn toward her front door, Plaintiff removed her nightgown, revealing her breasts. (Id. at

2

38:14-18.)  Plaintiff testified that she removed the nightgown because she intended to change clothes while attempting to contact her husband; however, he answered right away, and she put her nightgown back on before going back outside.  (Id. at 43:12-44:8.)[2]

       Plaintiff approached Officer Ruch and handed him the phone.  (Id. at at 44:9-11.)  Officer Ruch took the phone and told Plaintiff's husband Dr. Gary Raab that if he got home before the tow truck arrived, the trailer would not be towed.[3]  (Ruch Dep. at 57:6-25.)  At that point, a man named Michael Hinchman drove by the house, stopped his vehicle, and asked if there was a problem.  (Raab Dep. at 45:10-12.)  When he found out the trailer was going to be towed, he asked Officer Ruch if he could move the trailer, and Officer Ruch said "do what you want."  (Id. at 45:16-18.)  Plaintiff and her daughter Hillary, with the help of Mr. Hinchman, moved the trailer over the curb and into the driveway.  (Id. at 45:24-46:8.)  All three individuals had their backs to Officer Ruch, with Mr. Hinchman pulling the tongue and Plaintiff and Hillary pushing the trailer up the driveway from behind.  (Id. at 47:4-48:23.)  As they were pushing the trailer, Officer Ruch followed them up the driveway and asked for her name, to which Plaintiff allegedly responded "we are the Raabs," although Officer Ruch alleges that Plaintiff replied with an expletive and indicated that she would not tell him her name.  (Raab Dep. at 49:10-50:3; Ruch Dep. at 80:24-25.)

_____

[2] The first sixty-six paragraphs of Officer Ruch's Rule 56.1 statement recite almost the entire Complaint.  This is not the purpose of a Statement of Material Facts Not in Dispute.  See L. Civ. R. 56.1 (indicating that each paragraph shall cite "the affidavits and other documents submitted in support of the motion").  The purpose of the Rule 56.1 statement is to assist the Court in determining which underlying facts are in dispute and which are not.  See Comose v. N.J. Transit Rail Ops., Inc., Civ. No. 98-2345, 2000 WL 33258658, at *1 (D.N.J. Oct. 6, 2000).  Because the Court already has access to the Complaint, the tedious recital of its allegations in a Rule 56.1 statement fails to assist the Court in any meaningful way.

[3] There is a dispute as to whether Officer Ruch was certain Dr. Raab was on the line.  Dr. Raab alleges that Officer Ruch greeted him with "hello hubby," or something to that effect, allegedly a reference to him being the husband of the woman who handed Officer Ruch the phone.  (Deposition of Gary Raab, Ruch Mot. Summ. J. Ex. L ("Gary Raab Dep.") at 74:16-21.)  He also indicates that he identified himself as Gary Raab.  (Id. at 74:22-75:22.)  However, Officer Ruch alleges that Dr. Raab did not identify himself, and that he was not sure who was on the line because the reception was poor.  (Ruch Dep. at 57:16-23.)

At this point, Officer Ruch allegedly grabbed Plaintiff's right arm from behind while she was still pushing the trailer, attached a handcuff to her right wrist, and threw her to the ground. (Raab Dep. at 51:1-7.)  While she was on the ground, Officer Ruch allegedly continued to pull and twist the handcuff causing it to shift up to her elbow, pulling her arm in different directions, and caused Plaintiff's head to hit the ground several times.  (Id. at 60:19-64:19).  Throughout the encounter, Plaintiff cried for help and asked Officer Ruch to stop hurting her.  (Id. at 66:14-21.) Hillary Raab allegedly attempted to keep Plaintiff's head from bouncing on the concrete but Officer Ruch pushed her away into the bushes.  (Raab Dep. at 77:2-78:13; Deposition of Hillary Raab, Ruch Mot. Summ. J. Ex. J ("Hillary Raab Dep.") at 92:15-22.)  Officer Ruch denies telling Plaintiff at any time that she was under arrest.  (Ruch Dep. at 112:15-20.)

Officer Ruch's version of his physical interaction with Plaintiff differs greatly from hers. He alleges that Plaintiff set the trailer down, cursed at him, came toward him, and pushed him with her forearm, causing him to take a step back.  (Ruch Dep. at 82:17-83:15.)  Officer Ruch further alleges that as a result of that provocation, he grabbed Plaintiff by the right wrist, at which point she started slapping his hand, and subsequently fell to the ground on her back.  (Id. at 83:18-25.)  He alleges that her legs were flailing and that he was concerned for his safety, in particular, "protecting [his] privates, making sure [his] glasses didn't come off, or that she was going to kick [him] in the face."  (Id. at 92:12-93:2.)  At that point, Officer Ruch believed that Plaintiff experienced a "psychological episode" which required him to detain her for both his and her own safety, and he called for a supervisor.  (Id. at 89:19-90:5, 93:25-95:3.)

When Lieutenant Campbell, Officer Ruch's supervisor arrived at the scene, he called an ambulance, and told Officer Ruch to release Plaintiff in order to calm everyone down and "give her some dignity."  (Raab Dep. at 71:2-6; Deposition of Lieutenant William Campbell, Ruch

Mot. Summ. J. Ex. E ("Campbell Dep.") at 43:5-18.)  Plaintiff was helped up by her daughters,

the handcuff was removed, and she was taken inside and helped into bed.  (Raab Dep. at 73:16-

75:2.)  At that point, Dr. Raab arrived and allegedly told Lieutenant Campbell that his wife had

recently returned from a stress-related hospital stay.  (Campbell Dep. at 60:16-22.)  However,

Dr. Raab denies that he made such a statement, and indicated that he may have told Campbell

that she was under the care of a psychiatrist.  (Gary Raab Dep. at 100:1-7.)  Plaintiff refused to

take an ambulance to the hospital, because she was shaken up and wanted to see her primary care

doctor.  (Id. at 82:23-83:5.)

Plaintiff alleges that she injured her head, her right arm and shoulder during the

encounter with Officer Ruch.  (Raab Dep. at 85:8-86:14.)  Although Plaintiff refused emergency

medical treatment, she visited her primary care doctor on the date of the incident.  (Gary Raab

Dep. at 154:11-18).  Plaintiff subsequently sought treatment with a neurologist for neck pain,

right upper extremity pain, and arm pain and numbness.  (Pl's Opp'n to Ruch. Mot. Summ. J. Ex.

D.)  She was diagnosed with right thoracic outlet syndrome, right brachial plexopathy, and right

ulnar neuropathy, which she attributes to the injuries sustained in this incident.  (Id.)  Plaintiff

also alleges psychological trauma related to the incident, including anxiety, panic, post-traumatic

stress disorder, and nightmares.  (Id.; Raab Dep. at 139:11-12, 167:20-168:4).

Officer Ruch has been a member of the OCPD since August 1987.  (SUMF ¶ 31.)  He has

received biannual training on the use of force and various other topics, including emergency

psychiatric treatment and screening.  (Id. ¶¶ 32-61.)  On April 13, 2010, Officer Ruch received a

negative performance notice for failing to detain a suspect during a domestic violence call after

probable cause to arrest the suspect had been established.  (Pl.'s Opp'n to Ocean City Mot.

Summ. J. Ex. E.)  Specifically, he was advised that his failure to assertively establish command

created a "potentially dangerous situation."  (Id.)  The notice indicated that after probable cause

had been established to place the suspect under arrest, Officer Ruch allowed him to move freely

about the premises.  (Id.)  Prior to the incident giving rise to this suit, no complaints had ever

been lodged against Officer Ruch alleging an unreasonable seizure, unlawful search, or excessive

force.  (SUMF ¶ 65.)

Plaintiff filed an eleven-count Complaint in this Court on November 11, 2011.  Plaintiff

alleged the following causes of action: Count One, unreasonable seizure actionable under 42

U.S.C. § 1983; Count Two, excessive force actionable under 42 U.S.C. § 1983; Count Three,

unlawful search actionable under 42 U.S.C. § 1983; Count Four, supervisor liability actionable

under 42 U.S.C. § 1983; Count Five, inadequate training actionable under 42 U.S.C. § 1983;

Count Six, inadequate supervision actionable under 42 U.S.C. § 1983; Count Seven, false arrest

and imprisonment under New Jersey state law; Count Eight, excessive force under New Jersey

state law; Count Nine, assault and battery under New Jersey state law; Count Ten, negligent

infliction of emotional distress under New Jersey state law; and Count Eleven, negligent

retention and supervision under New Jersey state law.  Each count was asserted against Ocean

City, OCPD, and Officer Ruch.  On August 8, 2013, the parties stipulated to the dismissal of

OCPD as a party, and to the dismissal of Count Three in its entirety and Count Nine as to Ocean

City.  See ECF Doc. No. 38.  On January 17, 2014, Ocean City filed its motion for summary

judgment, and on April 30, 2014, Officer Ruch filed his motion for summary judgment.  The

parties have submitted their respective briefs and the motions are ripe for decision.

## II.  LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

6

Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case."  Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 F. App'x. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a

genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province

of the fact finder, not the district court.  <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974

F.2d 1358, 1363 (3d Cir. 1992).

**III. DISCUSSION**

**A.      Constitutional Claims**

Plaintiff alleges violations of the United States Constitution under 42 U.S.C. § 1983, as

well as the New Jersey Constitution under the New Jersey Civil Rights Act (the "NJCRA").  As

the allegations under the state and federal constitutions are virtually identical, and federal and

New Jersey law governing these violations are substantially similar, the Court will address the

constitutional claims together.  <u>See</u> <u>Szemple v. Correctional Medical Servs.</u>, 493 F. App'x 238,

241 (3d Cir. 2012) (indicating that "[t]he NJCRA is interpreted as analogous to § 1983"); <u>Rezem</u>

<u>Family Assocs., LC v. Borough of Millstone</u>, 423 N.J. Super. 103, 115 (App. Div. 2011)

(observing that the NJCRA "was modeled after § 1983").[4]

1.   Unreasonable Seizure

Plaintiff alleges that Officer Ruch violated her right to be free from unreasonable seizures

under the Fourth and Fourteenth Amendments to the United States Constitution when he grabbed

her from behind without probable cause to arrest her, and attempted to place her in handcuffs.[5]

In order to prevail on a claim for unreasonable seizure or false arrest, Plaintiff must prove that

(1) there was a seizure, and (2) the seizure was constitutionally unreasonable.  <u>Berg v. Cnty. of</u>

<u>Allegheny</u>, 219 F.3d 261, 269 (3d Cir. 2000).

---

[4] Counts One and Seven are the analogous federal and state constitutional claims, respectively, for unreasonable seizure, false arrest, and false imprisonment.  Counts Two and Eight are the federal and state claims, respectively, for excessive force.

[5] Because "the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis," the Court analyzes Plaintiff's claims under the Fourth Amendment.  <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 269 (3d Cir. 2000).

A seizure occurs when a person is "detained by means intentionally applied to terminate his freedom of movement."  Id.  An arrest clearly constitutes a seizure for Fourth Amendment purposes.  Id.  In the context of an arrest, the seizure violates the Fourth Amendment's guarantee against unreasonable seizures when it is made without probable cause.  Groman v. Twp. of Malalapan, 47 F.3d 628, 637 (3d Cir. 1995).  The existence of probable cause is determined by looking at the totality of the circumstances and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  United States v. Miknevich, 638 F.3d 178, 185 (3d Cir. 2011) (citing Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)).  "The determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene," and courts must "determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense [had been] committed."  United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984).

Although Officer Ruch testified that he did not place Plaintiff under arrest, he does not now argue that Plaintiff's claim fails for lack of an arrest, and thus the existence of a seizure is not at issue.  Rather, he argues that he is entitled to summary judgment because he had probable cause to arrest Plaintiff, and therefore, the seizure was reasonable.  Specifically, he alleges (1) that Plaintiff assaulted him on three occasions:  (a) first when she pushed the trailer into him, (b) again when she shoved a phone into his chest, and (c) a third time when she pushed him with her arm after moving the trailer into the driveway; (2) that he had probable cause to arrest Plaintiff for the crime of indecent exposure because she exposed her breasts in public; and (3) that the seizure was reasonable because Plaintiff was in need of involuntary confinement for the purpose of obtaining a mental health screening.

9

The Court will grant summary judgment on Plaintiff's unreasonable seizure claim because Plaintiff's act of pushing the trailer into Officer Ruch was sufficient to justify a reasonable belief that an assault had been committed.  Under New Jersey law, a person commits a simple assault "if [s]he:  (1) [a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another;" and a person commits an aggravated assault "if [s]he:  [c]ommits a simple assault . . . upon:  [a]ny law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority or because of his status as a law enforcement officer."  N.J.S.A. 2C:12-1(a)(1), (b)(5)(a).

At the summary judgment stage, facts are viewed in the light most favorable to the nonmoving party, and Plaintiff contends that she did not and could not have moved the trailer because it was too heavy.  However, when two parties tell different stories, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  In the context of video evidence, courts should "view[] the facts in the light depicted by the videotape."  Id. at 380-81.  Here, surveillance video captured by the Raabs' security system clearly shows that Plaintiff did in fact move the trailer into Officer Ruch.[6]  Although Officer Ruch was not injured by the trailer and thought the contact was unintentional, the question the Court must answer in a probable cause determination is

_____

[6] Video footage from the Raabs' security camera is available on the following website: http://www.njd.uscourts.gov/sites/njd/files/RaabVRuch-Kugler.wmv (last visited August 7, 2014).  Plaintiff objects that the photographs included as exhibits to Officer Ruch's moving brief do not conclusively show Plaintiff striking Officer Ruch with the trailer.  Pl.'s Opp'n to Ruch Mot. Summ. J. 3.  However, Officer Ruch produced the entire surveillance video from which the photographs were extracted, which does depict the trailer striking Officer Ruch.  Further, Plaintiff's claim that the photographs were never produced during discovery is unavailing, because the video was extracted from Plaintiff's home security system.  Plaintiff had someone from the security company come out to her home on the date of the incident in order to extract and preserve the footage.  (Deposition of Anthony SanFelice, Ruch Mot. Summ. J. Ex M. at 26:14-27.)  Further, it was Plaintiff who authorized the owner of the security company to produce the video evidence to the defendants.  Id. at 9:13-22.

whether "the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense [had been] committed." Glasser, 750 F.2d at 1206. The question of whether Plaintiff committed an assault when she pushed the trailer into Officer Ruch is entirely dependent on whether her mental state satisfied the requirements of the statute. Plaintiff is depicted on the surveillance video committing a voluntary act sufficient to constitute an assault. With any crime that contains a mental state requirement, such as assault, officers must "make a judgment call regarding [the suspect's] state of mind." Paff v. Kaltenbach, 204 F.3d 425, 437 (3d Cir. 2000). A police officer could conclude that there was a probability that Plaintiff acted knowingly in striking Officer Ruch with the trailer, given her knowledge of Officer Ruch's proximity to it.

Plaintiff's argument that Officer Ruch did not immediately arrest her after she pushed the trailer into him does not suffice, as she does not cite any law that indicates that an officer must immediately arrest a person or else lose probable cause. See, e.g. United States v. Mosby, 541 F.3d 764, 768 (7th Cir. 2008) (police were not "required to arrest [the suspect] the moment they had probable cause to do so"); Hoffa v. United States, 385 U.S. 293, 310 (1977) (finding that "[t]he police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect"). Accordingly, it is unnecessary to determine whether the other two alleged assaults constituted probable cause to arrest, whether probable cause existed under the indecent exposure ordinance, or whether Officer Ruch had justification to seize Plaintiff in order to conduct a mental health screening. Officer Ruch's motion for summary judgment on Plaintiff's unreasonable seizure claim will be granted.

2.   Excessive Force

Plaintiff alleges that Officer Ruch used excessive force when he grabbed her right arm from behind and pushed her to the ground while handcuffing her, twisted her arm, and caused

her head to strike the ground.  Excessive force in the course of an arrest is analyzed under the

Fourth Amendment.  Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).  As with an

unreasonable seizure claim, a plaintiff in an excessive force suit "must show that a seizure

occurred, and that it was unreasonable."  Id.  The test of Fourth Amendment reasonableness is

whether, under the totality of the circumstances, an officer's "actions are 'objectively reasonable'

in light of the facts and circumstances confronting [him], without regard to [his] underlying

intent or motivation."  Graham v. Connor, 490 U.S. 386, 397 (1989) (internal citations omitted);

see also Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

  "An excessive force claim must be evaluated from the perspective of a reasonable officer

on the scene, rather than with the 20/20 vision of hindsight."  Rivas v. City of Passaic, 365 F.3d

181, 198 (3d Cir. 2004) (internal citations omitted); see also Lamont v. New Jersey, 637 F.3d

177, 183 (3d Cir. 2011) ("Monday morning quarterbacking is not allowed.").  Reasonableness is

often a question for a jury; however, summary judgment in favor of defendants is appropriate "if

the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the

officer's use of force was objectively reasonable under the circumstances."  Kopec, 361 F.3d at

777 (quoting Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999)).

  Deciding whether a particular application of force is reasonable under the Fourth

Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the

individual's Fourth Amendment interests' against the countervailing governmental interests at

stake."  Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S 1, 8 (1985)).  Important

factors include (1) the severity of the suspected crime, (2) the immediate threat posed to officers,

and (3) whether the plaintiff was attempting to flee or resist arrest.  Id.

  Officer Ruch's motion for summary judgment on Plaintiff's excessive force claim must

fail because a jury could conclude that the force used was unreasonable.  The parties argue at length about the events leading up to the seizure, and Officer Ruch relies heavily on the surveillance video which he believes discredits Plaintiff's testimony.[7]  However, the video evidence does not depict the use of force by Officer Ruch when he handcuffed Plaintiff.  The last capture prior to the seizure depicts Plaintiff, her daughter, and Mr. Hinchman pulling the trailer up the driveway, with Officer Ruch walking behind them.  Just before he disappears from view, he reaches for the back of his belt with his right hand.  Plaintiff claims that while she was moving the trailer up the driveway, and while still holding onto it, Officer Ruch grabbed her from behind and threw her to the ground in an attempt to handcuff her.  Officer Ruch, on the other hand, alleges that after she set the trailer down, she walked toward him and shoved him in the chest with her forearm, after which he attempted to handcuff her, and she fell to the ground on her own when she physically resisted being handcuffed by pulling away.

There are thus critical, disputed facts present here, particularly whether Officer Ruch seized Plaintiff from behind while she was still pushing the trailer, or whether Plaintiff turned around and pushed Officer Ruch before he seized her.  The resolution of this and other questions turn on credibility determinations, which must be left to the jury.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (internal citations omitted).  A reasonable jury could disagree with Officer Ruch's account of these events, and if Plaintiff's version is to be believed, a jury could find that Officer Ruch's use of force was not reasonable.

---

[7] Although the video footage may be helpful to Officer Ruch in establishing probable cause to arrest, the video is not sufficiently clear or complete to discredit the excessive force claim, as the camera's view of the physical interaction between Plaintiff and Officer Ruch is obstructed by bushes. Furthermore, a reasonable jury could conclude that the portion of the video leading up to the actual seizure discredits Officer Ruch's testimony if it finds that he reached for his handcuffs as he disappeared behind the bushes.  Security Video 4:24 – 4:28.  Officer Ruch testified at his deposition that he did not reach for his handcuffs until after Plaintiff had finished moving the trailer and allegedly pushed him out of the way.

It is true that courts must recognize that law enforcement officers are often forced to make split second judgments "in circumstances that are tense, uncertain, and rapidly evolving" as to how much force to use. <u>Graham</u>, 490 U.S. at 396-97.  However, drawing all reasonable inferences in Plaintiff's favor, as the Court must, all three factors set forth in <u>Graham</u> weigh in Plaintiff's favor.  First, the severity of the suspected crime does not support forcing Plaintiff down to the ground in an attempt to arrest her.  To the extent that the suspected crime was assault by bumping Officer Ruch with the trailer, he admitted that he was not injured, and he thought it may have been accidental.  Further, enough time had passed to suggest that an immediate display of physical force was unnecessary in response to that crime.  To the extent that the crime was indecent exposure, this is a violation of a municipal ordinance that does not appear to be an especially serious crime.  There is further no indication of an immediate threat posed to officers.  Nothing in the record indicates that Officer Ruch was in fear of danger at any time, and in fact he testified that he decided to handcuff Plaintiff in part because he was tired of "not getting answers." (Ruch Dep. at 83:16-21.)  The third factor also weighs against summary judgment.  Although Officer Ruch indicates that Plaintiff resisted arrest, Plaintiff's version of events, which is supported by Mr. Hinchman's testimony, indicates that she had not attempted to flee or resist arrest when Officer Ruch attempted to handcuff Plaintiff.

Finally, Officer Ruch's argument that Plaintiff's injuries are insufficient to support an excessive force claim does not warrant detailed discussion.  <u>See</u> Ruch Mot. Summ. J 9-10.  He seeks to characterize this as a case of "excessive force by handcuffing."  <u>Id.</u> at 10.  In a case where the excessive force allegations relate to twisting of the arrestee's arm during handcuffing or overly tight handcuffs, a plaintiff may not prevail absent "obvious pain or visible discomfort, resulting injury, or necessary medical treatment." <u>Leibner v. Borough of Red Bank Police Dept.</u>,

Civ. No. 12-4104, 2013 WL 1065927, at *11 n.26 (D.N.J. Mar. 12, 2013).  Here, first of all,

Plaintiff alleges injuries resulting from Officer Ruch forcing her to the ground without

provocation, which removes this case from the "excessive force by handcuffing" category.

Further, Plaintiff has submitted evidence of significant physical injuries and necessary medical

treatment as described earlier.  Plaintiff alleges that her injuries involve her head, arm, and

shoulders, and has presented evidence that she sought medical treatment the same day that she

sustained the alleged injuries.  Officer Ruch cites no law in support of his argument that

Plaintiff's claim should fail because she "has no emergency room documentation," and because

she refused to be transported to the hospital via ambulance from the scene.  Ruch Mot. Summ. J.

10.  Any argument as to the legitimacy of Plaintiff's injuries is one for the jury.

       Officer Ruch's motion for summary judgment on Plaintiff's excessive force claim must

be denied because he has failed to carry his burden of establishing the nonexistence of a genuine

issue of material fact, and therefore, a reasonable jury could conclude that his seizure of Plaintiff

was unreasonable.  Specifically, a jury could conclude that Officer Ruch initiated physical

contact with Plaintiff and forced her to the ground, and such force was unreasonable because (1)

Plaintiff had committed no crime, or if she had, it was minor, (2) Plaintiff posed no threat to

Officer Ruch or anyone else, and (3) Plaintiff did not resist arrest or attempt to flee.

### B.  Qualified Immunity

       With respect to the civil rights claims asserted by Plaintiff, Officer Ruch also contends

that he is entitled to qualified immunity.  "The doctrine of qualified immunity protects

government officials from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."  Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010) (quoting Pearson v.

Callahan, 555 U.S. 223, 231 (2009)).  "[I]f a reasonable officer is not on notice that his or her conduct under the circumstances is clearly unlawful, then application of qualified immunity is appropriate."  Id.  "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Id. (internal citations omitted) "[T]he immunities of municipalities and their officials sued directly under [the New Jersey Constitution] are identical to those provided by federal law."  Lloyd v. Borough of Stone Harbor, 432 A.2d 572, 583 (N.J. Super. Ct. Ch. Div. 1981); see also Ramos v. Flowers, 56 A.3d 869, 882 (N.J. Super. Ct. App. Div. 2012) ("qualified immunity is an affirmative defense under the [NJCRA]").

The Supreme Court has established a two-part analysis to determine if qualified immunity is appropriate:  (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  Pearson, 555 U.S. at 232.  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  Id. at 236.  Here, the Court has resolved the first part of the test in the previous section.  Because summary judgment must be granted on Plaintiff's unreasonable seizure claims for the reasons expressed above, the Court need only determine whether the right at issue was "clearly established" with respect to the excessive force claim.

A right is "clearly established" only if the right was "sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right."  Ray, 626 F.3d at 174.  Even if the officer made a mistake about the legal constraints on his actions, as long as the mistake was reasonable, qualified immunity still applies.  Id.  To avoid hindsight, the officer's actions are judged from the perspective of a reasonable officer under the circumstances.  Id.

Officer Ruch's assertion of qualified immunity is based upon his version of what

16

occurred, and for this reason, qualified immunity does not apply to the excessive force claims.

When disputed facts are material to the objective reasonableness of an officer's conduct, a court

should not grant summary judgment on the basis of qualified immunity.  Curley v. Klem, 499

F.3d 199, 209-10 (3d Cir. 2007).  Here, Plaintiff indicates that after she moved the trailer into her

driveway, Officer Ruch grabbed her from behind and threw her to the ground, securing a

handcuff to one wrist and twisting her arm painfully.  (Raab Dep. 53-69.)  The testimony of Mr.

Hinchman also supports this version of events.  (Deposition of Michael Hinchman, Ruch Mot.

Summ. J. Ex. G ("Hinchman Dep.") at 56:14-57:19.)  While a jury might not believe Plaintiff's

version of events, if it does, the Court finds that such conduct would not support a mistaken, but

reasonable belief that such force was necessary.  No reasonable police officer would believe that

it was necessary to throw a much smaller suspect to the ground who was unarmed, not posing

any threat of danger to the officer or others, and who had not resisted arrest at the time she was

thrown to the ground.[8]  Qualified immunity exists "to protect officers from the sometimes 'hazy

border between excessive and acceptable force.'"  Carswell v. Borough of Homestead, 381 F.3d

235, 242 (3d Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)).  If Plaintiff's

version of events is credited, the use of force in this case would be clearly excessive, and not on

the "border" between excessive and acceptable.

### C. Tort Claims Against Officer Ruch

1.   <u>Assault and Battery</u>

Plaintiff also brings an assault and battery claim against Officer Ruch.  In order to

succeed on this claim, Plaintiff must demonstrate that Officer Ruch attempted to cause, or

---

[8] Mr. Hinchman testified that Plaintiff weighed approximately 110 pounds, while Officer Ruch was "well over 200 pounds."  (Hinchman Dep. at 64:13-20.)

purposely, knowingly or recklessly caused her bodily injury.  Under New Jersey law, a law enforcement officer "may use such force as is reasonably necessary under the circumstances" to effect a lawful arrest.  Hanson v. United States, 712 F. Supp. 2d 321, 329-30 (D.N.J. 2010) (internal citations omitted).  Where excessive force is used, police officers may be liable for assault and battery.  Hill v. Algor, 85 F. Supp. 2d 319, 411 (D.N.J. 2000).

If a police officer acts "in good faith in the execution or enforcement" of the law, he is entitled to immunity from suit under the New Jersey Tort Claims Act.  N.J.S.A. 59:3-3; Ribot v. Camacho, Civ. No. 09-5888, 2012 WL 2401983, at *3 (D.N.J. June 25, 2012).  In addition, New Jersey law provides immunity to public employees for injuries "resulting from the exercise of judgment or discretion vested in [them.]"  N.J.S.A. 59:3-2.  Officer Ruch asserts that both of these immunities apply.  However, the Tort Claims Act does not immunize public employees from any willful misconduct.  N.J.S.A. 59:3-14.  Courts in this district have thus allowed tort claims to proceed against law enforcement officers when sufficient evidence is produced that could support a finding that officers acted intentionally and recklessly in a display of force.  See Williams v. Twp. Of West Deptford, Civ. No. 05-1805, 2008 WL 1809134, at *11-12 (D.N.J. Apr. 22, 2008) (evidence supporting a finding that police officers "acted intentionally and recklessly in taking [the plaintiff] to the ground" was sufficient to withstand summary judgment on assault and battery claim); Gattas v. City of Jersey City, Civ. No. 07-4242, 2010 WL 892187, at *5-6 (D.N.J. Mar. 5, 2010) (denying summary judgment for assault and battery, where an unarmed man was handcuffed for a minor infraction and allegedly injured when the officer ignored his pleas that his pain was unbearable and the handcuffs needed to be loosened).

Although the seizure itself was lawful, there are genuinely disputed material facts that could lead a jury to conclude that Officer Ruch used excessive force as outlined above.  The

same analysis could lead a jury to find Officer Ruch liable for assault and battery.  Because there is a genuine question of fact regarding the reasonableness of Officer Ruch's conduct, he is not entitled to immunity under N.J.S.A. 59:3-2 or N.J.S.A. 59:3-3.  Neither is Officer Ruch entitled to immunity under N.J.S.A. 59:5-2, as he argues, which immunizes law enforcement officers from injuries caused by persons resisting or evading arrest.  If the facts are viewed in the light most favorable to Plaintiff, her injury was not caused by resisting or evading arrest. Accordingly, Officer Ruch's motion for summary judgment on Plaintiff's assault and battery claims will be denied.

2.    Negligent Infliction of Emotional Distress

Plaintiff next alleges negligent infliction of emotional distress ("NIED") against Officer Ruch.  However, when a physically injured tort victim suffers emotional distress in addition to physical injuries, the victim need not bring a separate claim for NIED.  See Mauro v. Raymark Indus., Inc., 116 N.J. 126, 137 (1989) (holding that a plaintiff who sustained a physical injury can recover for emotional distress without bringing a separate NIED claim).  Under New Jersey law, both recognized theories of NIED contemplate the absence of direct physical injury. Jablonowska v. Suther, 195 N.J. 91, 104 (2008) (indicating that the two recognized forms of NIED under New Jersey law are the "zone of danger" theory where the plaintiff is located within a zone of risk created by the defendant's negligent conduct, and the theory allowing recovery for witnessing the death or serious injury of a close family member).  Because Plaintiff has not produced evidence that would allow her to recover under either recognized NIED theory, summary judgment will be granted on her NIED claim.[9]

_____

[9] Although Ocean City did not move for summary judgment on Plaintiff's NIED claim, it did join in Officer Ruch's motion.  See ECF Doc. No. 67.

### D.  Claims Against Ocean City

1.  Municipal Liability under Section 1983

A municipality is not vicariously liable for the actions of its law enforcement officers.

Monell v Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  In order to make out a § 1983 claim

against a municipality, it must be shown to be responsible for its own unlawful acts.  Id. at 692.

"[W]hen a suit against a municipality is based on § 1983, the municipality can only be liable

when the alleged constitutional transgression implements or executes a policy, regulation, or

decision officially adopted by the governing body or informally adopted by custom."  McTernan

v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) (internal citations omitted).  Policy is

implemented when a "decision maker possess[ing] final authority to establish a municipal policy

with respect to the action issues an official proclamation, policy, or edict."  Id. at 658.  Custom,

on the other hand, is adopted "when, though not authorized by law, 'such practices . . . are so

permanent and well-settled as to virtually constitute law.'"  Id. (internal citations omitted).

"New Jersey courts apply the Monell standard to claims under both the federal constitution and

the New Jersey constitution."  Badalamente v. Monmouth Cnty. Prosecutor's Office, Civ. No.

08-2501, 2011 WL 1898833, at *7 (D.N.J. May 17, 2011) (citing Besler v. Board of Educ. of

West Windsor-Plainsboro Reg'l School Dist., 201 N.J. 544, 564-65 (2010)).

Deficient training or supervision may form the basis for § 1983 liability against a

municipality when "both (1) contemporaneous knowledge of the offending incident or

knowledge of a prior pattern of similar incidents; and (2) circumstances under which the

supervisor's inaction could be found to have communicated a message of approval to the

offending subordinate are present."  Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir.

1997) (emphasis added).  The Third Circuit later clarified that the message of approval may be

communicated through either action or inaction by a supervisor.  See Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).  "Generally, notice is established through a pattern of known prior constitutional violations."  Hernandez v. Borough of Palisades Park Police Dep't, 58 F. App'x. 909, 913 (3d Cir. 2003).  Only in "rare instances" when a constitutional violation is so "known and obvious" or a "highly predictable consequence" of an ongoing course of action is a pattern of known violations unnecessary.  Id. (internal citations omitted).  Here, Plaintiff's municipal liability claim fails because she has demonstrated neither knowledge of a prior pattern of similar incidents, or any message of approval by Officer Ruch's supervisors.

Plaintiff claims that the OCPD maintained a policy or custom that led to the constitutional violations that allegedly occurred at the hands of Officer Ruch.  Her principal evidence is the earlier discipline against Officer Ruch in connection with a domestic violence call.  However, the Court finds no evidence that any policy, custom, regulation, or decision officially or informally adopted by Ocean City resulted in any constitutional violations committed by Officer Ruch.  Plaintiff also fails to point to any history of past violations concerning arrest procedures that would have put Ocean City on notice that future violations would likely occur, nor does Plaintiff show that Ocean City acted with deliberate indifference to her constitutional rights.  See Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) ("Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations.")  Neither are the rare circumstances present here that permits municipal liability in the absence of a pattern of violations.  Even if Officer Ruch misunderstood or overreacted to the disciplinary action, Plaintiff falls short of showing that acts of excessive force are a "highly predictable consequence" of instructing an officer that he should have been more assertive with a potentially

dangerous domestic violence suspect.  No reasonable jury could find that because Officer Ruch

was previously told that he should have arrested a domestic violence suspect when probable

cause existed to do so, his supervisors communicated a "message of approval" to tackle citizens

to the ground every time any suspect is arrested.  Summary judgment will thus be granted on

Plaintiff's § 1983 claims against Ocean City.

    2.  State Law Claims Against Ocean City

    Plaintiff also alleges negligent retention and supervision under New Jersey common law,

and further argues that the OCPD provided Officer Ruch with improper training when it

reprimanded him for failing to arrest a suspect, and that it caused him to overreact when he

encountered her.  In order to establish a claim of negligent retention and supervision under New

Jersey common law, Plaintiff must show that (1) the employer knew or had reason to know of

the employee's particular incompetence, unfitness, or dangerous attributes, (2) the risk of harm

to others created by these qualities could have been reasonably foreseen by the employer, and (3)

the employee's dangerous characteristics or unfitness and the employer's negligence was the

proximate cause of the injury.  Silvestre v. Bell Atlantic Corp., 973 F. Supp. 475, 486 (D.N.J.

1997); see also Johnson v. Usdin Louis Co., Inc., 248 N.J. Super. 525, 528 (App. Div. 1991)

(citing Di Cosala v. Kay, 91 N.J. 159, 174 (1982)).

    Throughout Officer Ruch's twenty-two year career, not a single excessive force

complaint has been lodged against him, and Plaintiff has not pointed to any evidence that Ocean

City knew of any incompetence, unfitness or dangerous attributes.  Even if his lack of

assertiveness on a previous occasion could be considered unfitness or incompetence, Plaintiff

points to nothing suggesting that based on his actions on that occasion, Ocean City could

reasonably foresee that he would use excessive force on another occasion.  Finally, Plaintiff cites

no law in support of his theory that the city was on notice of Officer Ruch's poor performance because he was never promoted from patrolman.  Even if lack of promotion throughout a long career might be considered evidence of unfitness for a higher-level position, it does not merit serious consideration as evidence of unfitness for his present position.  Accordingly, Ocean City's motion for summary judgment on Plaintiff's claims for state law negligent retention and supervision, and § 1983 inadequate training and supervision will be granted.

Plaintiff's last remaining theory of recovery against Ocean City is <u>respondeat superior</u> municipal liability for excessive force under the New Jersey Tort Claims Act.[10]  However, excessive force is a constitutional tort, and <u>respondeat superior</u> does not apply.  <u>See</u> <u>Ingram v. Twp. Of Deptford</u>, 911 F. Supp. 2d 289, 297-300 (D.N.J. 2012) (declining to allow <u>respondeat superior</u> municipal liability for claims brought under the New Jersey Constitution).  Accordingly, the court will grant in full Ocean City's motion for summary judgment.

**E.  Punitive Damages**

"The purpose of punitive damages is to punish [a] defendant for his willful or malicious conduct and to deter others from similar behavior."  <u>Memphis Cmty. School Dist. v. Stachura</u>, 477 U.S. 299, 306 n.9 (1986).  "[A] jury may be permitted to assess punitive damages in an action under [section] 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983).  The Court cannot determine as a matter of law that Officer Ruch did not act with at least reckless indifference to Plaintiff's rights.  This is a proper question for the jury, and thus summary judgment will be denied as to the

_____

[10] Because the unreasonable seizure claims in connection with the arrest do not survive against Officer Ruch for the reasons discussed earlier, it is unnecessary to address Plaintiff's argument that Ocean City can be held liable for these torts under a theory of <u>respondeat superior</u>.  <u>See</u> Pl.'s Opp'n to Ocean City Mot. Summ. J. 8-9.

punitive damages claims against Officer Ruch.  <u>See</u> <u>Boardman v. Riverside Twp.</u>, Civ. No. 04-5779, 2007 WL 2066383, at *6 (D.N.J. July 13, 2007) (summary judgment found inappropriate as to punitive damages because "if a jury were to believe Plaintiff's assertions regarding excessive force, that may well support a finding of 'evil motive or intent' or 'reckless or callous indifference to the federally protected rights of others") (citing <u>Wade</u>, 461 U.S. at 56).  Because all claims against Ocean City will be dismissed, the Court need not reach its argument as to punitive damages.[11]

## IV. CONCLUSION

For the reasons stated above, Ocean City's motion for summary judgment will be **GRANTED**.  Officer Ruch's motion will be **GRANTED IN PART** and **DENIED IN PART**, as expressed in this Opinion.  An appropriate order shall enter today.

Dated:  8/7/2014                                    s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge

---

[11] Even in the event that Plaintiff could maintain a claim against Ocean City, "municipalities are immune from liability for punitive damages under § 1983."  <u>See</u> <u>Klemash v. Monroe Twp.</u>, Civ. No. 07-4190, 2010 WL 455263, at *11 (D.N.J. Feb. 4, 2010) (citing <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981)).